# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CARL JOSEPH MCDANIEL,**

      **Plaintiff,**

    v.                                                                                 **Case No. 12-CV-1178**

**WARDEN MICHAEL MEISNER,**
**JOHN DOE, Deputy Warden of Columbia Correctional Institution,**
**JANET NICHOLES,**
**DR. SONNETT CALDWELL-BARR,**
**DR. CARLO GANON,**
**TIM ZIGLER,**
**CO RIBBKE, and**
**SUSAN KOON,**

      **Defendants.**

---

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

---

On March 8, 2012, the plaintiff, Carl Joseph McDaniel ("McDaniel"), was assaulted by another inmate at Columbia Correctional Institution ("Columbia"). He was transferred the same day to the Wisconsin Resource Center ("WRC"). On November 19, 2012, McDaniel filed a *pro se* complaint under 42 U.S.C. § 1983. I granted McDaniel leave to proceed *in forma pauperis* and allowed him to proceed on (1) claims that he had warned staff members at Columbia that his cell mate was going to hurt him, but staff had not taken steps to protect him, and (2) claims that he was denied medical treatment at the WRC for his injuries from the assault. Before the Court is defendants' motion for summary judgment. Defendants argue that McDaniel failed to exhaust his administrative remedies before filing this action. After reviewing all of the submissions by both parties, I agree as a matter of law that McDaniel filed no timely complaints that complied with the requirements of the inmate complaint system.

## BACKGROUND

*1.    Offender Complaints Regarding Failure to Protect Claim*

On March 18, 2012, McDaniel submitted Offender Complaint WRC-2012-5881. He wrote that the date of the incident underlying the complaint was December 13, 2011, and he began the narrative portion of his complaint with a discussion of an assault that occurred on that date. The complaint went on to state that McDaniel was advised on February 29, 2012, that he would be getting a new cell mate from segregation. The plaintiff was told that his cell mate would be a 45 year old white guy that was quiet. But the cell mate, Ryan Olson, was actually 27 and coming off segregation time for threatening an officer and his family. On March 1, 2012, the plaintiff requested psychological services. At a session that day, Dr. Meier said he was going to arrange a single cell, but McDaniel never got it. An unknown female doctor came to McDaniel's cell and refused to grant the plaintiff "pair with care" status. She then came six work days in a row, including the day before the assault, and told the plaintiff not to harm his cell mate. McDaniel said Olson was a "fire cracker" with the fuse lit and that McDaniel needed out. But the doctor said psychological services could not give McDaniel that relief and refused to let McDaniel out of that situation. On March 8, 2012, McDaniel suffered a beating so bad he could not remember the actual beating. At the end of the complaint, McDaniel requested a "red tag" until a final discussion of his safety was complete. This complaint was rejected as presenting a previously addressed issue, the December 13, 2011 assault.

McDaniel filed two additional offender complaints that were received on March 28, 2012. In Offender Complaint WRC-2012-6510, McDaniel asked to be single celled at the Wisconsin Resource Center ("WRC") because he had been assaulted previously by another inmate at Columbia. Institution Complaint Examiner ("ICE") Renata Bacon rejected this complaint because cell assignments are not within the scope of the inmate complaint system.

McDaniel appealed the rejection to the reviewing authority, who found that the rejection was appropriate.

In Offender Complaint WRC-2012-6539, McDaniel also stated that he wanted to be single celled at the WRC because was previously assaulted by another inmate at Columbia. ICE Bacon rejected this complaint because the issue had been addressed in complaint WRC-2012-6510. McDaniel appealed the rejection to the reviewing authority, who found the rejection was appropriate.

Months later, McDaniel filed another offender complaint regarding this claim. Offender complaint WRC-2012-19685 was received on September 17, 2012, and suggested that Dr. Caldwell-Barr allowed McDaniel to stay in an imminently violent situation with another inmate on March 8, 2012. This complaint was rejected because it was beyond the 14 calendar day limit, and the reviewing authority found the rejection to be appropriate on appeal.

2. *Offender Complaints Regarding Medical Care Claim*

On July 12, 2012, the ICE office received Offender Complaint WRC-2012-14356. In that complaint, McDaniel alleged that he was not satisfied with the health care he was receiving at the WRC, but he did not cite any particular instances of care. This complaint was rejected for failure to allege sufficient facts because McDaniel did not provide any information regarding which specific treatment he was complaining about. The plaintiff appealed the rejection, and the reviewing authority found the rejection was appropriate.

Two months later, McDaniel filed Offender Complaint WRC-2012-19687, which was received on September 17, 2012. In this complaint, McDaniel alleged that he did not receive appropriate medical care following the assault on March 8, 2012. This complaint was rejected because it was beyond the 14 calendar day limit, and the reviewing authority accepted the rejection.

3

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## ANALYSIS

The defendants argue that they are entitled to summary judgment because McDaniel failed to exhaust his administrative remedies with regard to his claims before filing this action.

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion

requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 87, 92 (2006). It is the defendants' burden to establish that the plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

The Inmate Complaint Review System (ICRS) is the administrative remedy available to inmates within the Wisconsin prison system for complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1). However, an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin. Code § DOC 310.08(2)(a). Complaints filed under the ICRS must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e).

I must first consider whether Offender Complaint WRC-2012-5881 constitutes exhaustion of the plaintiff's failure to protect claims. McDaniel listed December 13, 2011, as the "date of incident." It is telling that the defendants did not even realize when they filed their motion for summary judgment that this complaint related to McDaniel's claims. The date of incident is an important box on the offender complaint form and is used to sort and identify complaints. Although it may have been an honest mistake, the incorrect date led the ICE to believe the complaint address an issue that had already been dealt with in a previous complaint.

5

I also note that a complaint in March about a December incident also would have been untimely, even if it had not already been addressed.

Even if I were to look past the incorrect date, Offender Complaint WRC-2012-5881 improperly included multiple issues. Though this may have been McDaniel's attempt to provide background and context, complaints may contain only one issue and must clearly identify the issue. Wis. Admin. Code § DOC 310.09(1)(e). I cannot, even viewing the evidence in the light most favorable to the plaintiff, conclude that this offender complaint presented only one issue or that any one issue was clearly identified. The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

The rest of McDaniel's offender complaints regarding his claims in this case were undisputedly submitted outside the 14 calendar day time limit and were rejected as untimely or as having been previously addressed. As a general rule, these untimely complaints do not constitute proper exhaustion of the claims they raised. However, in his response to the defendants' motion for summary judgment, McDaniel makes two arguments that I will address. First, McDaniel argues that he was threatened with an immediate transfer back to Columbia if he pursued any of his claims from Columbia at the WRC. Second, he argues that a correctional officer misled him and that he was following the officer's instructions when he submitted the new complaints that were received on March 28, 2012.

The duty to exhaust administrative remedies as a precondition to suing under § 1983 is limited to those remedies that are "available." 42 U.S.C. § 1997e(a); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). "[A] remedy must, to be 'available,' be available in fact and not merely

in form." *Schultz*, 728 F.3d at 620. "A remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline." *Id.* The Seventh Circuit has "left open the possibility that equitable estoppel might be a defense to failure to exhaust prison remedies" in "a situation in which prison personnel, sensing atypical cognitive or psychological infirmities of the prisoner plaintiff, deliberately exploit these infirmities to deter him from filing a grievance." *Id.* at 622. However, that hypothetical situation was far from the facts in *Schultz*, where the Court concluded that "the plaintiff had no reason to fear that his filing a grievance . . . about alleged retaliation for speaking up about the alleged assault would be punished." *Id.* at 620. This was because the pertinent regulation of the ICRS limits the offense of making false statements to prison staff to statements made "outside the complaint review system." Wis. Admin. Code § DOC 303.271; *Schultz*, 728 F.3d at 620.

Similar reasoning applies here and undermines McDaniel's suggestion that his failure to exhaust his administrative remedies was due to the threat of transfer back to Columbia. Despite any threats the plaintiff may have received, he still filed Offender Complaint WCI-2012-5881 within the prescribed time period and also pursued the criminal prosecution of Olson for battery by prisoners, which led to a conviction. Accordingly, I cannot conclude that an alleged threat of transfer excused the plaintiff's failure to exhaust his administrative remedies.

McDaniel's second argument also fails. Apparently McDaniel did not immediately receive a receipt for Offender Complaint WRC-2012-5881. When he asked Unit Manager Tim Lundquist (who is not a defendant in this case) what to do, Lundquist told him to refile the complaint. That is what led McDaniel to submit the two complaints that were received March 28, 2012. McDaniel says that he was told repeatedly that the WRC is not the Department of Corrections and that things are not done the same way and that he relied on these statements.

7

"An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011). That is not what happened here. The plaintiff asked Lundquist what to do because he was concerned about not having a receipt for Offender Complaint WRC-2012-5881. Lundquist told the plaintiff to refile his complaint, and the plaintiff submitted two additional complaints on March 25, 2012, which were received March 28, 2012. I can only surmise that Lundquist was directing the plaintiff to resubmit his claims in case Offender Complaint WRC-2012-5881 had been lost. But it was not lost. There was just a delay in the plaintiff receiving his receipt. It is impossible to know whether these later complaints would have been treated as timely if the plaintiff's original complaint had been lost. Nonetheless, the submission of these two extra complaints is essentially moot since the plaintiff's original complaint was received and considered by the ICE (even if it did not constitute an exhaustion of the claims). There was no need for the ICE to delve into the details of the later complaints or consider whether they should be deemed timely because the original complaint (WRC-2012-5881) was received and evaluated.

For the foregoing reasons, I conclude that the plaintiff has failed to exhaust his administrative remedies. The defendants are entitled to summary judgment, and the plaintiff's claims and this case will be dismissed without prejudice.

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 29) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that this case be and hereby is **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly,

Dated at Milwaukee, Wisconsin this 13th day of May, 2014.

BY THE COURT:

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge